940 F.2d 653
 1991 O.S.H.D. (CCH) P 29,462
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOUTHERN OHIO COAL COMPANY, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, Elizabeth
H. Dole, Secretary of Labor, Respondents.
 No. 90-1827.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1991.
Decided Aug. 14, 1991.
 
 On Petition for Review of an Order of the Federal Mine Safety and Health Review Commission.
 Henry Cajet, Jackson & Kelly, Washington, D.C. (Argued), for petitioner; Laura E. Beverage, Jackson & Kelly, Charleston, W.Va., David M. Cohen, Southern Ohio Coal Company, Lancaster, Ohio, on brief.
 Eva Lee Clark, Office of the Solicitor, United States Department of Labor, Arlington, Va. (Argued), for respondents; Robert P. Davis, Solicitor of Labor, Edward P. Clair, Associate Solicitor, Dennis D. Clark, Counsel, Appellate Litigation, Office of the Solicitor, United States Department of Labor, Arlington, Virginia; L. Joseph Ferrara, Washington, D.C., on brief.
 FMSHRC
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 On 31 January 1989 an inspector of the Mine Safety and Health Administration ("MSHA") found Southern Ohio Coal Company ("SOCCO") to be in violation of regulations of the Department of Labor and issued an order of withdrawal pursuant to section 104(d)(2) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. Secs. 801 et seq. (1988) ("the Act"). SOCCO contested the validity of that order before an administrative law judge ("ALJ") who modified and affirmed the order. The decision of the ALJ was affirmed by the Federal Mine Safety And Health Review Commission ("the Commission"). SOCCO continued the review process, as is its right, before this court. See 30 U.S.C. Sec. 816(a)(1). Finding no error, we affirm.
 
 
 2
 * As is evident from its title, the Act was enacted to protect the safety and health of miners. 30 U.S.C. Sec. 801(a). Responsibility for enforcement of the Act rests with MSHA of the Department of Labor. See 30 U.S.C. Sec. 813(a). MSHA inspectors visit the mines regularly to assure compliance with the Act and regulations promulgated thereunder. 30 U.S.C. Sec. 813(a). They have extensive enforcement powers to issue citations and mine closure orders and may impose both civil and criminal penalties. 30 U.S.C. Secs. 814, 820.
 
 
 3
 An operator may contest a citation, order, or a proposed civil penalty assessment before the Commission. 30 U.S.C. Sec. 815(d). The initial proceeding is conducted before an ALJ. 30 U.S.C. Sec. 823(d). Appeals from decisions of the ALJ lie to the full five-member Commission and from the Commission to the court of appeals. 30 U.S.C. Secs. 823(d), 816(a).
 
 II
 
 4
 Coal in the mines of SOCCO is removed by the longwall method by which a large shearing machine removes slices of coal from the face of a wall, known as the longwall face. The longwall face is the working end of a large block or panel of coal which, typically, is several hundred feet wide and several thousand feet long. Tunnels, also called "entries," are located along the longwall face (or width) and along each side (or length) of the block or panel. The entry on one end of the longwall face is referred to as the "headgate" entry and the one on the other end is referred to as the "tailgate" entry.
 
 
 5
 Along the length of the panel at the headgate side are two or more entries, in addition to the main headgate entry to the longwall face. One of these entries contains the conveyor belt which transports the extracted coal out of the mine. At least one of the entries serves as a passageway for fresh air to be pumped into the area and as an escape route in the event of an emergency. One or more entries along the other side, the tailgate side, allow the return air to exit the mine. Thus, fresh air is pumped into the mine through the intake entry on the headgate side, flows along the face entry to supply miners with fresh air, and moves out the tailgate entry carrying stale air and dangerous gasses such as methane.[1] The tailgate entry also serves as an escape route in the event of an emergency.
 
 
 6
 The shearing machine makes passes back and forth along the longwall face removing about 30 inches of coal on each pass. Hydraulic shields are used to support the roof above the longwall face entry, moving forward as the coal is removed. As the shields move forward the previously supported roof (behind the shields) collapses and becomes a part of the gob, or mined out area. It was the accumulation of loose coal in the intersection of the longwall face and tailgate entries that gave rise to the violations at issue. The intersection of the longwall face and tailgate entries is at the end of the hydraulic shields and loose coal that accumulates there must be removed manually.
 
 
 7
 The accumulation was first observed by inspectors on 30 January 1989 in a pile measuring some 70-feet long, 7- to 8-feet wide, and 4 feet high. At least an 18-foot length of this pile was directly adjacent to the longwall face at the tailgate end, and blocked and impeded travel between the tailgate and longwall face entries. The next day the inspectors returned to the mine and found the accumulation of coal still there, although a small amount of rock dust had been applied to it. A sample taken proved to be 79.2% combustible. SOCCO was cited for violating the mandatory safety standard contained in 30 C.F.R. Sec. 75.400 which requires, in relevant part, that "loose coal, and other combustible materials, shall be cleaned up and not be permitted to accumulate in active workings...." "Active workings" is defined in 30 C.F.R. Sec. 75.2(g)(4) as "any place in a coal mine where miners are normally required to work or travel."
 
 III
 
 8
 The findings of fact of the Commission, if supported by substantial evidence, are conclusive. 30 U.S.C. Sec. 816(a)(1). Questions of law are for this court although the Secretary of Labor's interpretation of the Act and mandatory safety standards, if reasonable, is entitled to deference. Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984).
 
 IV
 
 9
 SOCCO's central contention is that substantial evidence does not support the finding that persons are normally required to work or travel in the 18-foot area where coal had accumulated and, therefore, it is not an area of "active workings." As previously noted, the 18-foot area is located directly adjacent to the longwall face at the intersection of the longwall face and the tailgate entry. Mining was taking place, and miners were required to be, at the longwall face, directly adjacent to the cited accumulations.
 
 
 10
 For several reasons, the 18-foot area is an area where persons normally work and travel. First, 30 U.S.C. Sec. 75.215 requires that a mine's roof control plan must specify methods that are to be used to maintain a safe travelway out of the longwall mining section through the tailgate side of the longwall. In its roof control plan, SOCCO designated this area as a travelway and required that it be maintained. A mine safety inspector testified that in the event of an emergency at the longwall face, this travelway would be used.
 
 
 11
 Second, 30 C.F.R. Sec. 75.302 requires persons to work and travel in the area to monitor and maintain ventilation controls. There was testimony that SOCCO maintained ventilation controls at the tailgate end of the longwall face. Its clean-up plan required that ventilation curtains be kept tight. In this regard the Commission found:
 
 
 12
 [Inspector] Mitchell testified without dispute that a ventilation curtain was maintained outby the end of the accumulation and that as the face advanced the curtain was moved further outby. He stated, "someone has to go back there to move that." ... It is not an unreasonable inference that miners would therefore normally travel through the intersection to reach the curtain.
 
 
 13
 Third, as previously noted, the tailgate entry is a return air entry and 30 C.F.R. Sec. 75.305 requires that the entry be inspected weekly for safety. There was testimony that a weekly inspection was conducted. And, as the Commission found, "[t]o enter the tailgate entry from the longwall face, a person must pass through the intersection of the face and the tailgate entry, specifically through the area immediately adjacent to the outby end of the accumulation."
 
 
 14
 There was substantial evidence to support the finding by the Commission that the area was one where miners normally work or travel and, thus, an "active working" within the meaning of the Act.
 
 
 15
 SOCCO argues that "[a] hazardous area in which the mining process contemplates continuous, systematic, planned roof falls where persons do not normally work or travel cannot be considered 'active workings' subject to compliance with 30 C.F.R. Sec. 75.400...." Of course, our holding that miners do normally work and travel in the area destroys a necessary underpinning of this argument. Even so, SOCCO seems to argue that there is more danger to miners from roof failure, if they are required to enter the area to clean it up, than from the fire or explosion hazard that the regulation is designed to prevent. This contention is meritless.
 
 
 16
 Congress has specifically identified ignition and explosion sources as being primary causes of deaths and injuries to coal miners. Secretary of Labor v. Old Ben Coal Co., 1 FMSHRC 1954, 19561957 (1979). 30 C.F.R. Sec. 75.400 addresses the hazard created when combustible materials are permitted to accumulate and is a codification of the statutory standard mandated by Congress in section 304(a) of the Coal Mine Health and Safety Act of 1969, 30 U.S.C. Secs. 801 et seq. (1976) (amended 1977), which is identical to section 304(a) of the present Act. Id. Through this standard, Congress hoped to achieve its goal of eliminating ignition and fuel sources for explosions and fires. Id.
 
 
 17
 SOCCO's interest in the safety of its miners who have to remove coal from the area is commendable. However, whether those miners face greater danger from roof cave-in than from fire, explosion and blocking of escape routes is a decision entrusted by the Congress to the Secretary so long as the decision is in accordance with law and supported by substantial evidence. The decision here meets both criteria and will not be disturbed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Methane is liberated when coal is cut